**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19CV-00546-RSE**

**MANDY ROBY,**  **PLAINTIFF**

**VS.**

**ANDREW M. SAUL**,
*Commissioner of Social Security,*  **DEFENDANT**

**MEMORANDUM OPINION
AND ORDER**

The Commissioner of Social Security denied Mandy Roby's applications for disability insurance benefits and supplemental security income benefits. Roby seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Roby (DN 12) and the Commissioner (DN 17) have filed a Fact and Law Summary. Roby has also filed a Motion to Redact her confidential personal health information from the undersigned's disposition of the case and to file the unredacted version of the opinion under seal. (DN 19). The Commissioner responded in opposition to this requested redaction (DN 24), and Roby replied (DN 26).

The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13).

I. Findings of Fact

Mandy Roby is 42 years old and last worked as a waitress at Mellow Mushroom restaurant in 2014. She had to quit because her back pain prevented her from completing her shifts. (Tr. 40-41). Roby claims, however, that she is currently unable to work largely due to her emotional state. (Tr. 42). Life for Roby has been an uphill battle. She has experienced trauma after trauma. She was abused as a child and put in the state's care at age 12. (Tr. 54). Her son passed away when she was 18 years old. (*Id.*). In 2012, Roby sustained a concussion from a car accident and claims her brain hasn't functioned correctly since then. (Tr. 43). A year later she was assaulted in the parking lot of her apartment; the attacker broke her nose and gave her another concussion. (*Id.*). Roby has "knocked people out" in the past and worries she will do so again when she is angry or frustrated. (Tr. 55-56).

Housing has been a struggle for Roby. From June of 2014 to June of 2016 she lived in transitional housing at St. Vincent de Paul or in a homeless shelter. (Tr. 43). After that, she moved to Beecher Terrace but was only there for three weeks before being sexually assaulted outside of her home. (Tr. 44). Because of the assault she claims she was provided a Section 8 housing voucher and moved into an apartment where she currently resides with her 18-year-old son and 21-year-old daughter. (*Id.*).

Roby has been getting epidural injections for her back since her car accident in 2012 and attends physical therapy. (TR. 46). For many years Roby smoked marijuana to help with her nausea and anxiety, but she stopped in order to get back on prescription pain medication. (Tr. 46-47). Her children cook for her, do the grocery shopping, and clean the house. (Tr. 52). A behavior analyst, Susan Reed, visits her home regularly and helps her deal with the effects of her past traumas. (Tr. 53).

Roby previously applied for disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI on September 28, 2012, alleging disability beginning on January 6, 2012. (Tr. 64). Those applications were denied at the initial and reconsideration levels, and, after a hearing, were ultimately denied by Administrative Law Judge Candace A. McDaniel ("ALJ McDaniel") on July 11, 2014. (Tr. 76). ALJ McDaniel adjudicated Roby's disability for the period from January 6, 2012, through July 11, 2014, and found that she was not disabled under the regulations.

Roby again applied for DIB and SSI on December 22, 2015, claiming she became disabled on July 12, 2014, due to PTSD, depression, anxiety, multiple personality disorder, asthma, seizures, migraines, radiculopathy, bulging discs, arthritis, and carpal tunnel. (Tr. 103-04, 245-46, 247-48). Her applications were denied initially (Tr. 101, 119) and again on reconsideration (Tr. 138, 156). At Roby's request, Administrative Law Judge Dwight D. Wilkerson ("ALJ Wilkerson") conducted a hearing in Louisville, Kentucky, on February 9, 2018. (Tr. 36). Roby attended the hearing with her attorney. (Tr. 38). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ Wilkerson issued an unfavorable decision on July 5, 2018. (Tr. 25).

ALJ Wilkerson applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Roby has not engaged in substantial gainful activity since July 12, 2014, her alleged onset date. (Tr. 17). Second, Roby has the severe impairments of degenerative disc disease, obesity, borderline personality disorder, PTSD, a depressive disorder, and an anxiety disorder. (Tr. 18). Third, none of Roby's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). Between the third and fourth steps, ALJ Wilkerson found Roby has the

residual functional capacity to perform light work with the following limitations:

> Use of the hands is limited to frequent but not constant; with no overhead work; no exposure to hazardous settings such as unprotected heights or operation of dangerous moving machinery as well as no exposure to concentrated levels of extreme temperatures, wetness and humidity; limited to simple routine tasks that are low stress (no fast-paced production rate demand) with little or no change in the work routine and no close tandem work with others to complete a task and no work with the general public and only occasional superficial interaction with co-workers and supervisors.

(Tr.20). Fourth, Roby has no past relevant work to consider. (Tr. 23). Fifth and finally, considering Roby's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 24).

Roby appealed ALJ Wilkerson's decision. The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Roby sought judicial review from this Court. (DN 1).

## II. Conclusions of Law

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as

adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### B. Analysis

Roby presents several arguments against ALJ Wilkerson's denial of benefits, all related to the opinion of Susan Reed, a behavioral analyst that regularly visits Roby's home. (DN 12-1). She argues ALJ Wilkerson improperly ignored Susan Reed's opinion in evaluating Listing 12.00 and in his residual functional capacity determination. (*Id.* at pp. 10-18). Specifically, Roby claims that Reed is a treating source and that ALJ Wilkerson did not give "good reasons" for rejecting her opinion and erroneously found Reed's opinion was inconsistent with the reports of other healthcare providers. (*Id.* at pp. 5-18). The Commissioner responds that ALJ Wilkerson reasonably evaluated Reed's opinion because she is not an acceptable medical source under the regulations and, therefore, cannot be considered a treating physician. (DN 17, at pp. 3-5).

Susan Reed is a behavior analyst that began treating Roby weekly starting in February of 2017. She completed a "mental residual functional capacity assessment" of Roby on January 31, 2018, opining several categories of "marked" and "extreme" limitations. She found Roby to be markedly limited in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to make simple work-related decisions; to accept instructions and respond appropriately to criticism from supervisors; and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 2178-80). She also opined extreme

limitations in Roby's ability to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods; to interact appropriately with the general public; to get along with coworkers and peers without distracting them or exhibiting behavioral extremes; to respond appropriately to changes in the work setting; and to tolerate normal levels of stress. (*Id.*). Reed concluded that Roby could not work on a regular and sustained basis due to her mental impairments, specifically her inability to self-manage and self-regulate and her lengthy history of aggression in the job setting. (Tr. 2180). Reed's assessment also stated that Roby had a current Global Assessment of Functioning (GAF) score of 30. (Tr. 2177).

The regulations require administrative law judges evaluate every medical opinion in the record. 20 C.F.R. 404.1527(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments . . . ." *Id.* at (a)(1). The regulations list categories of medical providers that are "acceptable medical sources." At the time Roby filed her applications, 20 C.F.R. § 404.1513 listed licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists as acceptable medical sources.[1] The Commissioner correctly points out that the Sixth Circuit does not consider mental health counselors or therapists to be acceptable medical sources. *See, e.g., Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 n. 9 (6th Cir. 2016) (stating that Social Security Ruling 06-03 provides that licensed clinical social works are not acceptable medical sources); *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397-98 (6th Cir. 2014)

---

[1] On March 26, 2017, new versions of 20 C.F.R. 404.1513 and 404.1502 went into effect, altering the definition of "acceptable medical source." These amendments, however, are not expressly retroactive and do not apply to Roby's applications for disability filed on December 22, 2015. *See, e.g., Carroll v. Saul*, No. 1:18-CV-00171-LLK, 2019 WL 3307054, at *1 n. 2 (W.D. Ky. July 23, 2019).

(clarifying that a therapist is not properly classified as acceptable medical source). Even Roby seems to admit that a behavior analyst, like Susan Reed, does not qualify as an acceptable medical source. (DN 12-1, at pp. 4-5).

Reed instead falls into the category of "other sources" in the regulations. 20 C.F.R. § 404.1513(d). ALJs have discretion to determine the proper weight to accord opinions from "other sources." *Engebrecht*, 572 F. App'x at 397-98 (quoting *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (add' citation omitted)). Evidence from other sources may be used to "show the severity of [a claimant's] impairment(s) and how it affects [their] ability to work." 20 C.F.R. § 1513(d). ALJ Wilkerson was, therefore, required to consider Reed's opinion and treatment notes but was not obligated to afford the evidence any particular weight. *See Cole v. Astrue*, 661 F.3d 991, 939 (6th Cir. 2001) (Recognizing that the ALJ was required to consider the opinion of plaintiff's "other source" mental health therapist in view of the therapist's expertise and longstanding treatment relationship with plaintiff). This also means that ALJ Wilkerson was not required to provide "good reasons" for discounting Reed's opinion. *See Franklin v. Berryhill*, No. 5:18-CV-00122-LLK, 2019 WL 1173379, at *3 (W.D. Ky. Mar. 13, 2019); *Skaggs v. Colvin*, No. 1:15-CV-00145-HBB, 2016 WL 5539606, at *3 (W.D. Ky. Sept. 28, 2016).

ALJ Wilkerson appropriately considered and weighed Reed's opinion. He did not ignore Reed's opinion as Roby argues. Rather, he discussed Reed's opinion at some length. He first noted that Reed was not an acceptable medical source under the regulations and, therefore, her opinion could not be granted any controlling weight. (Tr. 23). He went on to note that Reed's opinion was at odds and inconsistent with a June 2017 treatment note from a psychiatric clinic where claimant was "cheerful, doing lots of family activities and [her] depression was much better." (*Id.*). ALJ Wilkerson further considered that Reed supported her assessment in part based on Roby's use of

7

marijuana for her constant back pain, leg pain, and nausea from certain medications "exacerbate[ing] her depression." Because Roby testified that she discontinued marijuana to comply with her pain management treatment plan, ALJ Wilkerson found Roby's treatment history did not support the basis on which Reed relied in her opinion. (*Id.*). ALJ Wilkerson also noted that the conservative nature of Roby's musculoskeletal treatment was inconsistent with the type of pain that would profoundly exacerbate her depressive condition. (*Id.*). ALJ Wilkerson concluded that Reed's opinion was entitled to "little weight" based on its lack of support and inconsistency with the treatment record. (*Id.*).

This analysis complies with the regulations and is supported by substantial evidence in the record. ALJ Wilkerson considered the opinion's consistency with the overall treatment record and considered that certain observations by Reed were not reflected in Roby's treatment history. An exhaustive evaluation of the § 404.1527(c) factors was not required. *See Tabor v. Comm'r of Soc. Sec.*, No. 1:16-cv-2971, 2018 WL 1373821, at *4 (N.D. Ohio Mar. 19, 2018) (ALJ not required to perform an exhaustive factor-by-factor analysis of the regulations to fulfill her obligations under SSR 06-03p in evaluating other source opinions) (citing *Snyder v. Comm'r of Soc. Sec.*, No. 1:15-CV-137, 2016 WL 944905, at *10 (W.D. Mich. Mar. 14, 2016) (collecting cases)).

Roby's arguments that ALJ Wilkerson erroneously found Reed's opinion was inconsistent with reports of other healthcare providers are not persuasive. Most notably, notes from five years of treatment with Dr. Goodwyn, a psychiatrist, revealed normal and unremarkable exams. (Tr. 1848-1942). Roby claims the lack of variation in Dr. Goodwyn's exam notes is inconsistent with Dr. Goodwyn's observations in the "History of Present Condition" section of his notes, indicating frequent fluctuations in Roby's mental health. But the "History of Present Condition" section of his notes contains many subjective reports from Roby as to how she has been doing and what

8

symptoms she is experiencing; whereas, Dr. Goodwyn's exam notes are objective medical findings. While Roby's subjective complaints are entitled to consideration, ALJ Wilkerson did not err in crediting the objective medical examinations from her treating psychologist. (*See* Tr. 21 ("[t]he treatment record is replete with numerous normal or near normal mental status examinations by various medical providers.")).

Nor does the Court find merit in Roby's arguments regarding ALJ Wilkerson's evaluation of Listing 12.00. She claims ALJ Wilkerson failed to evaluate the medical evidence, specifically Reed's opinion, under the revised criteria of the Listing. (DN 12-1, at p. 10). Since Roby believes Reed is an acceptable medical source under this listing, Roby argues ALJ Wilkerson should have considered her opinion in evaluating whether Roby meets Listing 12.00. (*Id.*). The Commissioner argues that Roby "attempts to transpose considerations about mental evidence as discussed in Listing 12.00 onto the regulations governing medical opinions and acceptable medical sources." (DN 17, at p. 5 n. 7).

The introduction to Listing 12.00 "Mental Disorders" discusses the evidence to be considered in evaluating mental disorders at Step Three. 20 CFR Pt. 404, Subpt P, App'x 1, Listing 12.00(C). Subsection (2) indicates that the agency will consider "all relevant medical evidence about your disorder from your physician, psychologist, and other medical sources, which include health care providers such as physician assistants, psychiatric nurse practitioners, licensed clinical social workers, and clinical mental health counselors." *Id.* (C)(2).

In evaluating whether Roby could meet the criteria of Listing 12.04, 12.06, 12.08, and 12.15, ALJ Wilkerson indicated that although Roby's representative relied heavily on Reed's report, "evidence from qualifying treating sources conflict with the assessment made by the behavior analyst [Reed]." (Tr. 18-19). ALJ Wilkerson specifically noted how objective evidence

9

from psychiatrist Erik Goodwyn contrasted with the marked limitations that Reed assigned to Roby. By considering Reed's limitations and the contrasting evidence from other physicians in evaluating the Paragraph B criteria for Roby's mental impairments, ALJ Wilkerson followed the regulations and supported her conclusions with substantial evidence in the record.

### C. Roby's Motion to Redact the Instant Memorandum Opinion and Order

Roby has requested that the Court's Memorandum Opinion and Order be redacted to protect her personal health information and that the unredacted decision be filed under seal. (DN 19). Roby asserts that several third-party websites have begun aggregating social security opinions and include listings of a claimant's alleged health conditions in relation to the social security requirements to obtain disability benefits. Public access to certain sensitive personal health information, Roby argues, could subject her to ridicule and discrimination. The Commissioner opposes this request, asserting that Federal Rule of Civil Procedure 5.2 already provides significant protection to Social Security litigants' privacy and Roby's privacy concerns are not compelling. (DN 24).

It is not necessary to determine whether certain of Roby's personal health information is entitled to redaction or sealing because the Court was able to resolve the issues in Roby's case, all related to her behavior analyst's opinion, without referencing the specific information that Roby sought to be protected. Because discussion of such information was not pivotal or even influential in evaluating Roby's claims, Roby's motion to redact and seal unredacted opinion will be denied as moot.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.** This is a final and appealable Order and there is no just cause for delay.

**IT IS FURTHER ORDERED** that Roby's Motion to Redact Personal Health Information (DN 19) is **DENIED as moot.**

Copies:   Counsel of Record

11